IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHIEF EXPLORATION & DEVELOPMENT, LLC,** | ) ) ) | |
| *Plaintiff,* | ) ) | No. _____ |
| *vs.* | ) ) ) | Judge _____ |
| **ORDIE PRICE'S SAWMILL, INC., ROGER D. BENNETT, AND ELIZABETH S. BENNETT, HIS WIFE.** | ) ) ) ) ) ) | [Filed Electronically] |
| *Defendants.* | ) | |

## COMPLAINT

Chief Exploration & Development ("Chief") files its complaint against Defendants Ordie Price's Sawmill, Inc. ("Sawmill"), Roger D. Bennett, and Elizabeth S. Bennett.

## PARTIES

1. Chief is a limited liability company organized under the laws of Texas with corporate offices located at 5956 Sherry Lane, Suite 1500, Dallas, TX 75225.

2. The Bennetts are Pennsylvania citizens residing at 1649 Beaver Pond Road, Clarks Summit, PA 18411.

3. The Sawmill is a business incorporated under the laws of Pennsylvania with offices located at 7025 SR 92, South Gibson, PA.

-1-

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

5. The parties are completely diverse.

6. The amount in controversy exceeds the sum of $75,000 exclusive of costs and interest.

## VENUE

7. Venue is proper in the Middle District of Pennsylvania as defendants reside in this judicial district and a substantial part of the events giving rise to this complaint occurred in this judicial district. *See* 28 U.S.C. § 1391(a)(1), (2).

## BACKGROUND

8. The Bennetts own 185 acres of real property in Lenox Township, Susquehanna County.

9. On May 31, 2006, the Bennetts executed an oil-and-gas lease with The Keeton Group, LLC (the "Base Lease") covering their 185-acre tract. The Base Lease is attached at Tab "A."

10. As a bonus for executing the Base Lease, the Bennetts received $25.00 per acre ($4,625.00).

11. The Keeton Group, LLC, assigned the Base Lease to eCorp Resource Partners I, LLC ("eCorp"), on February 26, 2007. The eCorp assignment is attached at Tab "B."

12. eCorp assigned the Base Lease to Chief on March 14, 2008. The assignment is attached at Tab "C."

13. As a result of the eCorp assignment, Chief owns the oil-and-gas interests under the Base Lease.

14. The Base Lease provides for a five-year primary term beginning May 31, 2006.  *See* Lease at 1, Lease Term Clause.

15. The Base Lease grants Chief the option to extend the initial, five-year primary term for an additional five years:

> **EXTENSION OF TERM**: Lessee may extend the primary term for one additional period equal to the primary term by paying to Lessor, at any time within the primary term, proportionate to Lessor's percentage of ownership, and Extension Payment equal in amount to the compensation received by the Lessor for this Paid Up Lease, plus Five Dollars ($5.00) per net mineral acre, or by drilling a well on the Leasehold or on lands unitized or combined with the Leasehold which is not capable of production in paying quantities.

*See* Lease at 1, Extension-of-Term Clause.

16. The Base Lease describes how to make any payments due to the lessor:

> **MANNER OF PAYMENT**: Lessee shall make or tender all payments due hereunder by check, payable to Lessor, at Lessor's last known address, and Lessee may withhold any payment, without interest, pending notification by Lessor of a change in address.

Lease at 1, Manner-of-Payment Clause.

17. The Bennetts' last-known address is 1649 Beaver Pond Road, Clarks Summit, PA 18411.

18. The Bennetts did not notify Chief of any change in address.

19. On March 23, 2011, before the expiration of the primary term, Chief prepared a check for $5,550 payable to the Bennetts. A copy of the check is attached at Tab "D."

20. By letter dated April 1, 2011, and mailed April 4, 2011, Chief sent a letter to the Bennetts at 1649 Beaver Pond Road, Clarks Summit, PA 18411, enclosing the check as payment for the option to extend the primary term of the Base Lease for an additional, five-year period. The letter enclosing the check is attached at Tab "E."

21. On April 4, 2011, Chief executed a "Notice of Extension of Oil and Gas Lease" and sent the notice to the Susquehanna County Recorder of Deeds Office for recording. A copy of the notice recorded on April 19, 2011, is attached at Tab "F."

22. With respect to any "top lease," the Base Lease provides as follows:

> If, at any time within the primary term of this lease or any continuation thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease (top lease) covering all or part of the afore described lands, Lessee shall have the continuing option, by meeting any such offer, to acquire such top lease. Any offer must be in writing and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt from Lessor of a complete copy of any such offer to advise

Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any top lease granted by Lessor in violation of this provision shall be null and void.

*See* Lease at 2, Top-Lease Clause.

23. On information and belief, the Bennetts communicated to the Sawmill that they could convey the oil-and-gas interests that Chief owns pursuant to the Base Lease.

24. On or about April 11, 2011, the Sawmill purportedly sent an unsigned, offer letter to the Bennetts (with "cc" to "Chief Gathering LLC"). A copy of the offer letter is attached at Tab "G."

25. In the letter, the Sawmill offered to execute a lease ("Top Lease") with the Bennetts for the same 185-acre tract already covered by the Base Lease. A copy of the purported Top Lease is attached at Tab "H."

26. The Top Lease is exactly the same as the Base Lease except that it changes the lessee's name to the Sawmill, the effective date of the lease to March 15, 2011, and the royalty to 20%.

27. The Top Lease is dated before the end of the primary term of the Base Lease.

28. The Top Lease does not refer to Chief's Base Lease.

29. The Top Lease is not expressly made subject to the Base Lease.

30. On April 18, 2011, Chief Gathering LLC, an uninvolved third party, received a copy of the offer letter and Top Lease sent by the Sawmill. A copy of the receipt signed by Chief Gathering LLC is attached at Tab "I."

31. Chief Gathering LLC is a different and separate entity than Chief Exploration & Development LLC.

32. Chief Gathering LLC does not have and has never had any interests in the Base Lease.

33. On April 24, 2011, the U.S. Postal Service returned Chief's letter to the Bennetts enclosing the check for the option payment with the notations "returned to sender," "unclaimed," and "unable to forward." A copy of the envelope with the U.S. Postal Service notations is attached at Tab "J."

34. On July 8, 2011, through their counsel, the Bennetts sent a letter to Chief Gathering LLC enclosing the purported Top Lease. A copy of the July 8, 2011, letter is attached at Tab "K."

35. The July 8, 2011, letter states that the Bennetts accepted the offer of the Sawmill as of April 24, 2011, because Chief did not respond within 15 days after the Sawmill sent its April 11, 2011, offer pursuant to the Top-Lease Clause of the Base Lease.

36. Chief Gathering LLC forwarded the letter to Chief for a response.

37. This is the first Chief ever learned of any purported top lease.

38. After correspondence between counsel for the Bennetts and Chief's in-house counsel, the undersigned sent a letter to counsel for the Bennetts dated August 26, 2011, explaining that Chief exercised its option to extend the Base Lease and that the purported Top Lease is null and void. A copy of the letter is attached at Tab "L."

## COUNT I – DECLARATORY RELIEF: EXTENSION OF LEASE
## (AGAINST ALL DEFENDANTS)

39. Chief incorporates the preceding paragraphs.

40. The Base Lease grants Chief the option to extend the initial, primary-term until May 31, 2016.

41. The Base Lease requires that Chief (a) "tender" payment to the Bennetts (b) in the correct amount (c) at their last known address; and (d) before the expiration of the primary term.

42. Chief tendered the extension payment on April 4, 2011, when it mailed a check to the Bennetts.

43. The check is for the correct amount of $5,550 as required by the Base Lease.

44. Chief sent the check to the Bennetts at their last-known address of 1649 Beaver Pond Road, Clarks Summit, PA 18411, being the address stated in the Base Lease.

45. Chief tendered payment to the Bennetts at their last known address in the correct amount before May 31, 2011, the date the initial, primary term would have expired.

46. The Base Lease does not require that the Bennetts receive or cash the extension payment in order for the extension to take effect.

WHEREFORE, Chief demands judgment in its favor as to Count I and requests that the Court issue an order (1) declaring that Chief extended the Base Lease until 2016 by tendering the extension payment; (2) declaring that the Lease is in full force and has been extended until May 31, 2016; and (3) granting such other relief as the Court deems necessary or appropriate.

### COUNT II – DECLARATORY RELIEF: TOP LEASE IS NULL AND VOID (AGAINST ALL DEFENDANTS)

47. Chief incorporates the preceding paragraphs.

48. The purported Top Lease is null and void.

49. The Top-Lease Clause of the Base Lease provides that the lessor must notify the lessee of any bona fide offer to enter into a top lease with a third party before the lessor may accept the top lease.

50. The Bennetts never properly notified Chief of any bona fide offer to enter into the Top Lease before they entered into it with the Sawmill.

51. Because the Bennetts violated the Top-Lease Clause, the purported Top Lease is "null and void" such that Chief never had the obligation to match or otherwise respond to the Sawmill's offer.

52. Moreover, the Top Lease does not include any of the required terms that make it an effective top lease.

53. As a result, the Top Lease unlawfully purported to convey Chief's oil-and-gas interests while Chief still owned those interests.

WHEREFORE, Chief demands judgment in its favor as to Count II and requests that the Court issue an order (1) declaring that the Top Lease is null and void and (2) granting such other relief as the Court deems necessary or appropriate.

### COUNT III – EQUITABLE EXTENSION (AGAINST THE BENNETT DEFENDANTS)

54. Chief incorporates the preceding paragraphs.

55. The Bennetts repudiated the Base Lease on April 24, 2011, when they purported to accept the Top Lease and convey Chief's oil-and-gas interests to the Sawmill.

56. A repudiation occurs when, while a lease is in full force and effect, the lessor clearly and unequivocally challenges the lessee's title to and interest in the lease.

57. The remedy for repudiation is to extend the lease for a period of time equal to the period beginning on the date of repudiation until such time as the Court finally resolves the dispute in the lessee's favor.

58. Here, the Bennetts accepted the purported Top Lease as of April 24, 2011.

59. The Base Lease was in effect as of April 24, 2011, because the initial, primary term had not expired.

60. The Bennetts clearly and unequivocally challenged Chief's title in and to its oil-and-gas interests in the Base Lease by purporting to convey those interests to the Sawmill.

61. The primary term of the Base Lease is tolled as of the date of repudiation.

62. Because the Bennetts repudiated the Base Lease, its primary term is extended for a period equal to the period beginning on the date of repudiation (April 24, 2011) until such time as the Court resolves this dispute in Chief's favor.

WHEREFORE, Chief demands judgment in its favor as to Count III and requests that the Court (1) equitably extend the Base Lease for a period equal to the period beginning on April 24, 2011, and the date the Court resolves the dispute in Chief's favor; and (2) grant such other relief as the Court deems necessary or appropriate.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT
## (AGAINST THE SAWMILL)

63. Chief incorporates the preceding paragraphs.

64. The Sawmill tortiously interfered with Chief's Base Lease.

65. Chief had a contractual relationship with the Bennetts pursuant to the Base Lease.

66. The Base Lease was in full force and effect when the Sawmill offered to execute the Top Lease with the Bennetts.

67. The Sawmill entered into the Top Lease with the Bennetts intending to acquire the oil-and-gas interests held by Chief while Chief still owned those interests.

68. The Sawmill had no justification or privilege to attempt to acquire Chief's oil-and-gas interests while Chief owned those interests.

69. The purported Top Lease has placed a cloud on Chief's title such that the Base Lease has lost value; Chief is unable to market its oil-and-gas interests covered by the Base Lease; and Chief has lost the opportunity to develop oil and gas because it cannot reasonably be expected to develop its oil-and-gas interests if the Top Lease is in place.

WHEREFORE, Chief demands judgment in its favor as to Count IV and requests that the Court issue an order (1) awarding damages in an amount in excess of $75,000 exclusive of costs and interest and (2) granting such other relief as the Court deems necessary or appropriate

## COUNT V – SLANDER OF TITLE (AGAINST ALL DEFENDANTS)

70. Chief incorporates the preceding paragraphs.

71. The Bennetts and the Sawmill have slandered Chief's title to the Base Lease.

72. Chief owns the Base Lease.

73. On information and belief, the Bennetts made a statement to the Sawmill that they could convey the oil-and-gas interests owned by Chief under the Base Lease.

74. The Sawmill offered to lease the oil-and-gas interests from the Bennetts.

75. The Bennetts accepted the offer as of April 24, 2011.

76. In effect, the Top Lease states that the Bennetts owned and could convey Chief's oil and gas interests to the Sawmill.

77. In effect, the Top Lease states that the Sawmill now owns Chief's oil-and-gas interests.

78. These statements are false because Chief owns the oil-and gas-interests pursuant to the Base Lease such that the Bennetts cannot convey those interests and the Sawmill cannot acquire them.

79. The Bennetts and the Sawmill on one or more occasions communicated those false statements to Chief, Chief Gathering LLC (an uninterested third party), and counsel for Chief.

80.   Both the Bennetts and the Sawmill knew or should have known when those parties entered into the Top Lease that the Bennetts did not own the oil-and gas-interests and that the Sawmill could not acquire them during the primary term of the Base Lease.

81.   On information and belief, the Bennetts and the Sawmill agreed to develop the Top Lease transaction so that the Bennetts could attempt to force Chief into accepting or matching the terms offered by the Sawmill.

82.   The purported Top Lease has placed a cloud on Chief's title such that the Base Lease has lost value; Chief is unable to market its oil-and-gas interests covered by the Base Lease; and Chief has lost the opportunity to develop oil and gas because it cannot reasonably be expected to develop its oil-and-gas interests if the Top Lease is in place.

WHEREFORE, Chief demands judgment in its favor as to Count V and requests that the Court issue an order (1) awarding damages in an amount in excess of $75,000 and (2) granting such other relief as the Court deems necessary or appropriate.

**K&L GATES** LLP

s/ George A. Bibikos
David R. Fine (PA 66742)
david.fine@klgates.com
George A. Bibikos (PA 91249)
george.bibikos@klgates.com
17 North Second Street, 18th Floor
Harrisburg, PA 17101
(717) 231-4500
(717) 231-4501 (facsimile)

*Counsel for Chief Exploration & Development, LLC*

October 4, 2011

## CERTIFICATE OF SERVICE

I certify that on October 4, 2011, I caused a copy of the foregoing to be served on the following by U.S. Mail, postage pre-paid:

Patrick J. Lavelle, Esq.
1000 S. State Street
Clarks Summit, PA 18411
*Counsel for the Bennetts*

Ordie Price's Sawmill, Inc.
7025 State Route 92
South Gibson, PA 18842